
RECEIVED
JAN 21 2021
PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

5:21-cv-34-D

| | |
|---|---|
| REINALDO OLAVARRIA<br>Plaintiff<br><br>v.<br><br>Wake County Board of Education, Cathrine Trudell, Jennifer Rothaar, Jennifer Palmer, Emily Mae Bishop, Jacquline Cunningham, Marsie Rabii, Heather Cooke, and Jerryeen Daniels (all in their official capacities) | Complaint<br>(Jury Trial Requested) |

1
2
3
4 **Jurisdiction**
5
6     Jurisdiction[1] is based on the right of a parent[2] to file independently regarding a claim of

7 IDEA.[i] Jurisdiction is based on violations of the Civil Rights Act. Jurisdiction is based on

8 violations of the Americans with Disabilities Act. Jurisdiction is based on violations of Due

9 Process. Jurisdiction is based on violations of the 504 Rehabilitation Act. Jurisdiction is based on

10 defendants acting under the color of law to deny the constitutional rights of Reinaldo Olavarria, in

---

I.    [1] **Winkelman v. Parma City School Dist., 550 U.S. 516 (2007)**

[2] https://www.casemine.com/judgement/us/5914b421add7b0493476a649

their official capacity. Jurisdiction is based on unequal protection under the constitution and violations by defendant of constitutional rights.

## Background Information

Out of a legal marriage in the State of North Carolina, by two citizens, including Reinaldo Olavarria [a dual US Citizen and citizen of Puerto Rico] were born two minor children ERO and ABO. Both parent and children continuously resided in the State of North Carolina since the marriage in 2004 and subsequent births of children, biological children of Reinaldo Olavarria.

Shortly after birth, both children were identified by their treating primary care physician, the late Dr. Frederick Douglas Burroughs[3], as exhibiting developmental delays. As a result, parents took the children for evaluations by the North Carolina Department of Health and Human Services department of early intervention and both were accepted into their intervention programs due to developmental delays [more readily expressed in speech impediments]. Services through this state agency continued through their pre-school years, and most extensively the services were for speech delays and stuttering (speech impediments, SI).

One child, through pre-school and school based services, overcame their disability. The other child, ERO, in the formalized school setting, needed continued services, services that continue until this day.

---

[3] Obituary for Dr. Frederick Douglas Burroughs | Haywood Funeral Home (haywoodfh.com)

33    Difficulties were experienced with the transition to the school environment, by the parents,

34 for securing appropriate services for ERO. Due to his age and needs, ERO was identified and

35 participated in Pre-School at Carver Elementary School (CES) in Wake County North Carolina

36 through the Wake County Public School System (WCPSS). Herein began the problem, because,

37 additional assessments and evaluations revealed the beginnings of symptoms of SLD (Specific

38 Learning Disability), ADD (attention deficit disorder), in addition to the previously diagnosed

39 speech developmental disorder.

40

41    ERO did not thrive in the pre-school environment and evidenced the symptoms of the

42 disabilities aforementioned [SI, SLD, ADD]. Notations here is the parents did not fail to secure

43 placement in pre-school due to his disability and previous identification by the State of North

44 Carolina. Immediately, parents advocated a higher level of services that could best be delivered

45 in the special education environment, upon continued presence and attendance at CES until May

46 2019. The pleas and request were not properly responded too. ERO should have been placed in

47 special education when he entered kindergarten; it was seen by his parents that "Interventions"

48 were not sufficient in kindergarten. However, WCPSS refused placement, and, its policy to justify

49 such was based on the use of IQ levels and testing that the United States Congress on or about

50 2004 and 2006 recommended against when passing IDEA legislation, as seen in the federal register

51 of the United States.

52

53    Consistently, parents advocated a higher level of services that could only be delivered in

54 Special Education from the kindergarten placement, the year and months ending completion of

55 such, ending kindergarten, did not result in placement. However, WPCSS denied placement until

56  about the 4th grade at CES. The initial placement in special education was through an ADD
57  diagnosis, then after many appeals and hearings and agreements, WCPSS finally acknowledged
58  their policies and practices were wrong and resulted in the delay in placement in special education
59  for several years. On 5/17/2018, he was finally placed properly and finally identified as an SLD
60  student in Special Education. Again, that resulted, due to WCPSS and CES and the acts of
61  Katherine Faison in particular, acts of Elizabeth Barrett, acts of Brenda Melvin, acts of Ashlee
62  Taylor, acts of Rossi Volley, and acts of Jacqueline Cunningham in a detrimental delay in the
63  delivery of services that even caused the improper retention of ERO by one grade at CES.
64
65  On 03/07/2017, ERO was evaluated by Dr. James Poole and ADD was officially
66  determined. However, SLD was persistent all through CES attendance, and, it was through SLD
67  that the parents requested special education services since Kindergarten, and would have averted
68  the retention in 2nd grade.
69
70  In the IDEA appeals process, the parents had a resolution meeting, prior to 2018, with
71  Jacqueline Cunningham. Through that process, and with the ACTS of lawyers from the
72  Tharrington Law Firm, multiple breaches of confidentiality of protected health information and
73  school records did occur at the hands of lawyers from Tharrington and Jacqueline. That included
74  the denial of access to official school records. The Wake County Board of Education and WCPSS
75  was immediately and timely informed of such; and a request of recusal of Tharrington due to their
76  breach and acts was properly submitted. Again, it was Jacqueline Cunningham that was the
77  principal policy maker and enforcer and director that was directly responsible for using anti-IDEA
78  (Individuals with Disabilities Education Act) policies and procedure and principal actor that

4

79 caused multiple breaches of confidentiality. These were additional barriers and acts that caused
80 the delay and non-delivery of services to meet ERO's needs. It evidenced a deliberate indifference
81 by WCPSS in their service delivery model, policy and practices, and overall attitudes against
82 ensuring minority children receive the special education services they need. Way pass 2006, they
83 kept using an IQ model that was clearly against IDEA, and in 2017 and 2018 stated, yes, we will
84 be training staff in the next two years on the proper IDEA eligibility determination standards; for
85 over 10 years, their policies did not reflect the intent of congress, deliberately, knowing that the
86 population that suffered the most from those acts were minority special education students.

87

88       The last year and month at CES included a discussion and multiple requests for services to
89 "make up" for the years ERO was denied a Free and Appropriate Education and IDEA services
90 and services under 504 and the Americans with Disabilities Act. That included the requests for
91 extended school days, extended school years, and compensatory services. Since May 2019, all
92 services were denied and/or not delivered in a timely manner. Deliberate indifference continues
93 on the part of WCPSS. Again, since entry to WCPSS and CES, IDEA services and other needed
94 services were denied due to deliberate indifference most evidenced by using anti-IDEA policies
95 and procedures in their service eligibility and delivery model. Justice delayed is justice denied,
96 As a parent, I personally have been involved all throughout WCPSS attendance in the request,
97 determinations, and eligibility process for services. The result was due process denials and delays.
98 The results were the unequal treatment of my child to include when his best friend was advanced
99 in a special program while my child was retained. ERO is more than 2 years (grade levels) behind
100 in academic achievement due to deliberate indifference on the part of the WCPSS/defendants.

101

The 2019 school year ended with ESY (extended school year) being granted, but due to school policies and procedures, ERO was subjected to being placed in a learning environment along with MR (mentally retarded) and severe DD (developmentally delayed).students, profoundly disabled individuals. This reminded me of placement in Junior High School when I was erroneously placed with what we termed the "head bangers". WCPSS policy, as expressed by Barrett and Melvin, espouses the concept of 1 special education teacher to 5 students. However, all students are at different levels. Hence, as ERO described it in CES, "I never get any help because the others are moving all around and cannot sit still". Imagine if you will, being placed in a room with persons whom are learning how to use a spoon and learning the letters of the alphabet, versus, you, needing help with 4th and 5th grade math and writing. That is WCPSS deliberate indifference. That was after appeals just to get ESY, and turns out it was only productive on the last two days of three weeks, and admitted to such by special education teaching staff.

## Current Acts/Cause of Action

Middle school was and is a continuation of the plight experience since entry into the public school system. It began with a call for a special meeting to discuss extended school days and the possibility of advancing ERO to the grade he needed to be in according to age. Procedural due process ensures that requests for help are properly reacted to in a timely manner. Not so herein, we asked for a meeting in the beginning of the school year. It was not responded to. Finally, after much parental action, it finally got scheduled for three months, approximately, after the request was made and properly submitted to middle school administration. However, the horror is sitting in a meeting, and school staff, deliberately and with intent, covering their inaction by labeling the

late response to a meeting request as "we are performing an annual review, in December [not March, April, or May according to our annual review schedule, we met already annually for years on that schedule]; Due process failure. Then, the animosity expressed when an appeal and objections were filed to that meeting, (December 2019), that led to a meeting to resolve the issues, and we signed a resolution contract on January 31, 2020. However, the terms of such have since such time not been adhered to by WCPSS and the middle school administrative and special education staff. C. Trudell and the chief special education present, Jennifer Rothaar, led the acts of deliberately falsifying school records [making the December meeting an "Annual Meeting"]. Defendants include Jennifer Palmer, Emily Mae Bishop, Jacquline Cunningham, Marsie Rabii, Heather Cooke, and Jerryeen Daniels; all of these defendants have participated in the deprivation of due process and other rights aforementioned. These individuals comprised the IEP team and LEA and policy high ranking policy officials.

2020, since its onset and change to the middle school environment, has been marked by the outright failure to provided requested special education services. That includes the refusal to hold ERO to the same academic standards as his peers. IDEA specifically details that student are to be held to the same academic standards of their peers. The 2019 middle school year began with a quest for compensatory and services to "bring him to grade level", because, prior to middle school entry, WCPSS failed to provide him the services he need to help him function at or above grade level.

A pandemic interrupted the normal service provision, but, for special education students in the private sector, many students did not "skip a beat". They have been attending school since the

onset of the pandemic. They have been getting special education services through IDEA without any interruption. Some may see this as a political disaster and lack of leadership in the public sector. The end result is even in the virtual environment, many services were requested, like extended school days, virtually, and providing virtual hands on instruction to "keep him engaged" were not provided. ERO was and is left on his own.

IEP goals were disregarded at the beckoning of special education and regular education staff. We had managed in March 2020, to get "extra assignments assigned" for ERO to make up and catch up to grade level; however, teaching staff told him, well, those assignments are optional, you do not need to do them. No read out loud. No additional work to build his vocabulary and writing skills. And, this current term includes not even being able to get extended time to complete assignments.

The current school year is marked by inconsistent instruction time and schedules. No substitute teachers. Most of the IEP goals and services have been disregarded. Basically, the resolution agreement from January 2020 is not being adhered to in any meaningful manner. We requested additional testing and assessments, and, not have been properly responded to. Some, many, say the "democratic governor …….. democratic school board" [is at fault], but when coupled with deliberating accepting school funds for special education, then slashing to budget, as in Thom Tillas, then you have evidence mounting of deliberate indifference. Special education had teaching assistants in the classroom and special education teachers in the classroom as push in services, then curriculum assistance was outside of the classroom to help "bridge the gap". Doing assignments for him is not the same as helping him do the assignment and adhere to grade level

171 standards [WCPSS staff is dong such for him]. Having him take exams on the same schedule as
172 regular students without additional test taking time, and, in nowhere can it be found that any of
173 those tests and quizzes are being read aloud to him. No additional work to bridge the gap in
174 education; instead, he is further behind academically, all in violation of our agreement and IDEA
175 standards.

176

177       December 2020 even reached new lows for the administration. The star of an IEP meeting
178 was not even invited to the meeting (ERO). I remember the courts legal standards when I was in
179 foster care [a foster care worker], at the age of 12, children had to be asked and invited to determine
180 what they wanted [live with your mom, dad, etc]. I attended every special education meeting, and
181 was invited to all of them, when I was in special education due to my disability. However, WCPSS
182 actions and policy went even further. They had a meeting wherein they did not even send mailed
183 invitation notices, and sent one to the wrong address, an address she had not used for over five
184 years, of my exwife. ERO, no invitation (sending it to the wrong address is like not sending it at
185 all). They set the time without consultation of the family. They called the meeting an annual
186 meeting, when clearly it was not an annual meeting. Heck, they did not even sent copies of the
187 ECATS, one governing documents during IEP meetings. Then after all that, he, ERO gets a notice
188 that he is facing retention, but, that is because the middle school is not providing the services we
189 agree to. They violated and continue to violate procedural due process and IDEA standards.

190

191       As a parent, I am not a sloth whom is not vested and interested and has done nothing for
192 my son. I fought hard and channeled my energy to avail and use procedural due process. However,
193 the school and the system (WCPSS) is adamant about not providing services as outlined in IDEA

194  and other governing disability laws. I grieve each time I try to secure services for my young adult.
195  It hurts me personally to see him struggle, be frustrated, and act out in anger. I am in the zone of
196  danger and have been personally affected. Years of hurt and heart ache I have suffered along with
197  my child. ADA, 504, IDEA, and all the disability laws all have provisions to sue, by a parent,
198  when the system fails the parent and the child. Years being excluded from Special Education
199  compounded by the placement therein with the failure to provide needed services to make up for
200  their mistakes (WCPSS).
201
202    If you deliberately hire special education policy makers whom only have a book knowledge
203  of special education, and, deliberately use outdated criteria, and, unequally provide services as in
204  white male students and white female will get services according to need rather than the minority
205  child, then that is the substance of unequal education and discrimination. It is also due process
206  violations. I remember one meeting wherein C. Trudell stated although he failed EOGs (end of
207  grade exams) we have other data to show he is doing well and we report that to our superiors. I
208  asked for and never received those reports. Hum. It is well documented that there are disparities
209  in service delivery in special education, that need not be litigated because it is widely known, but,
210  it is the substance of the explanation as to why this child is not receiving the services he needs; he
211  is a black male of mixed heritage.
212
213    My actions and attempts to secure services are detailed and extensive. That includes
214  reaching out to State Department of Public Instruction Leaders and the board of the board of
215  education and district leaders like super intendents. The letters, calls, emails and meetings are
216  numerous.

217

218    I sue because I have been injured along with my child. I sue because due process has been
219    denied. I sue because of the civil rights violation and unequal protection. I sue because the lack
220    of a free and appropriate education. I sue because my son has been discriminated against due to
221    his disability, and I have been injured due to that action. I sue because I tried all I could to secure
222    the disability services he needs through IDEA, but, due to deliberate indifference, defendants and
223    the board of education just denied the services, continuously, Some of defendant acts are criminal
224    and/or against state and federal law, as herein shown.

225

226    The lack of multiculturalism is one attributing factor. WCPSS does not ensure its staff is
227    diverse. I remember the last year at CES and applying for an assistant principal job there. In my
228    mind, I said, they will surely give me the positions. I asked C. Trudell if she ever saw a person in
229    a wheelchair teaching or be an administrator in all the time, her 20 plus career, and she said she
230    only saw one, years ago, and that person became disabled while on the job. Discrimination in
231    hiring practices by WCPSS has fermented and solidified into an "anti-disability" environment.
232    You lack staff to guide the development of policies to combat "book and educational" knowledge
233    of disability versus personal experiences to combat unjust and improper treatment of the disabled.
234    I consistently asked middle school staff if they talked with or consulted with ERO about his needs,
235    and the answer is "no". Deliberate indifference with the added cements of "if you are handicapped
236    you cannot work here" [employment discrimination]. A person with lesser experience was hired
237    at CES, than me, and the school system continues discrimination based on disability. I remember
238    him saying everyone is scared of you [the lack of exposure to persons with disabilities] as being a
239    deliberate effect of discriminatory hiring practices.

240

241    Over 10 years I entered the halls and premises of CES. Not once did I find a disabled employee working there, at hire. Over 10 years of advocating for a disabled child and not being able to get services; how many parents can say they have a middle school student that has the academic achievement of a elementary school student, every as a parent you tried everything you could? My app garden account just expired this month. App garden is what I consider to be WCPSS version of a poll tax. That account is to get certification in the policies of WCPSS, without being offered an employment position. I could understand if part of a new hire policy you had to learn school policy; but, WCPSS adds a barrier to disenfranchised minorities to get certification in a specific policy in order to be hired for positions like substitute teacher, and economy and discriminatory policy. It is not like in New York, wherein you apply for an occasional per diem license, that just required you present copies of your college transcripts to be able to teach in New York City Schools. The deliberate indifference is shown in this charging document. 2020 is the era when the employment discrimination against the disabled is open and flagrant. 2020 is the era wherein it is known that minorities face inequities in the education system. 2020 is the era wherein for many minorities free and appropriate education is not possible. 2020 is when I had a conversation with a Black neighbor about reverse discrimination wherein Black government employees feel entitled to only hire "their own" just like Whites have for years; the problem is I am not Black or White. Either way, disabled employees are still not present according to their numbers in government positions. Public sector discrimination is also a charge against the defendant(s).

261

262    A jury trial is requested. The ability to proceed in forma paupers is being requested. But,
263    the expectation is answers to this charging document. What is not expected is an answer in the
264    form of just a motion to dismiss; and, a judge just ruling without a hearing on the merits and
265    allegations in this document.

266    Relief Sought

267    A judgement in favor of Reinaldo Olavarria totaling $10,000,000.00 (ten million dollars).
268    That to include General Damages, Special Damages, Compensatory Damages, and Punitive
269    Damages.

270    A trial of this matter by Jury.

271    Any other relief the court can grant in favor of Reinaldo Olavarria

272
273
274    Respectfully Submitted by

*[signature: Reinaldo Olavarria]*
*Valid from 12/2020 to 12/2021*

275
276    Reinaldo Olavarria
277    Plaintiff
278    Rolavarria012017@gmail.com
279    919-400-8046
280    614 Gaslight Trail
281    Wendell, NC 27591  1/18/2021

---

i

**OCTOBER TERM, 2006**
**YLLABUS**

**WINKELMAN V. PARMA CITY SCHOOL DIST.**

**SUPREME COURT OF THE UNITED STATES**

WINKELMAN, a minor, by and through his parents and legal guardians, WINKELMAN et ux., et al. v. PARMA CITY SCHOOL DISTRICT